IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | | |
|---|---|---|
| RICHARD BELINI and<br>THERESA LUSCIER-BELINI, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>)<br>) | CA: 04-30083 MAP |
| WASHINGTON MUTUAL BANK, FA, | )<br>) | |
| | ) | **JURY DEMANDED** |
| Defendant. | )<br>) | |

## COMPLAINT

### INTRODUCTION

1.  This action seeks redress against Washington Mutual Bank, FA ("Washington Mutual") for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA") and the Home Ownership Equity Protection Act amendment to TILA, 15 U.S.C § 1639 (hereinafter "HOEPA") to enforce the Plaintiffs' right to rescind a consumer credit transaction, to declare void the Defendant's security interest in the Plaintiffs' home, to seek statutory and actual damages and attorney's fees by reason of the Defendant's violations of the Act and Regulation Z, 12 C.F.R. 226 (hereinafter called "Regulation Z"), and it's Massachusetts counterparts, Massachusetts Consumer Credit Cost Disclosure Act, Mass. G.L. ch. 140D and 209 C.M.R. part 32.

### JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction over this action under 15 U.S.C. §1640 (TILA), and 28 U.S.C. §§1331 ( general jurisdiction),1332 ( diversity jurisdiction) and 1337 ( interstate commerce) and 1367 ( supplemental jurisdiction). Diversity jurisdiction is applicable as the Plaintiffs are residents of Massachusetts and seek rescission of a $102,750.00 mortgage



obligation held by an out of state corporation that does not have it's principle place of business in Massachusetts.

3. Venue in this District is proper because Defendant does business in this District.

## PARTIES

4. Plaintiffs Richard and Theresa Belini reside in a home which they own at 546 Barbour Street, North Adams, Massachusetts.

5. Foundation Funding Group, Inc. ("Foundation Funding") was the provider of the Plaintiffs' mortgage but is now defunct.

6. At the time of the Plaintiffs' mortgage, Foundation Funding entered into more than 5 transactions per year in which credit was extended that was secured by the principal residence of a consumer and was used for purposes other than the initial acquisition or construction of the residence.

7. Therefore, at the time of the transaction Foundation Funding was a creditor as defined in TILA and implementing Federal Reserve Board Regulation Z and Mass. G.L., ch. 140D.

8. Defendant Washington Mutual Bank, FA is the assignee and present holder of the Plaintiffs' mortgage from Foundation Funding.

## FACTS

9. On or about December 30, 2000, Plaintiffs obtained a $102,750.00 mortgage loan from the now defunct entity, Foundation Funding Group, Inc. secured by their principle residence. All of the proceeds of the loan were used for personal, family or household purposes.

10. Upon information and belief, Defendant Washington Mutual is the assignee and owner of the mortgage obtained by Plaintiffs from Foundation Funding.

11. In connection with the loan of December 30, 2000, Plaintiffs received or signed the following documents:

    a. A Mortgage attached as <u>Exhibit A</u>;

    b. A Note attached as <u>Exhibit B</u>, and;

    c. A HUD-1 Settlement Statement, attached as <u>Exhibit C</u>;

    d. A Notice of Right to Cancel, attached as <u>Exhibit D</u>;

12. The Notice of Right to Cancel inaccurately referenced the date of the transaction as December 29, 2000. Accordingly, the right to cancel was defective and the Plaintiffs were not given accurate material disclosures and have an extended right to rescind their loan.

13. The Plaintiffs mortgage loan transaction was an extension of credit by a creditor subject to HOEPA and the implementing Federal Reserve Board Regulation Z, 12 C.F.R. § 226.32 and it's Massachusetts counterpart, 209 C.M.R. 32.32.

14. The Plaintiffs were accordingly entitled to the following disclosure (together with additional disclosures concerning the terms of the mortgage) at least three (3) days prior to the closing:

> You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet the obligations under this loan.

15. Although the December 30, 2000 mortgage transaction was a high cost mortgage as defined by 1602(aa) of TILA, the Plaintiffs were not provided with the special advanced

3

disclosures as required by HOEPA and or the Massachusetts counterpart 209 C.M.R. 32.32.[1]

16. Because the notice of right to cancel was defective and the advanced required disclosures were not provided, Plaintiffs have a continuing right to rescind the loan, which they exercised on or about May 9, 2003. <u>Exhibit E</u>.

17. On May 12, 2003 the Defendant acknowledged receipt of the rescission demand but has refused to release the security interest on the Plaintiffs' property. <u>Exhibit F</u>.

18. 15 U.S.C. § 1635(g) provides that a court may award damages under section 1640 in addition to rescission. Mass .G.L. ch. 140D § 10(g) is identical except for citation.

19. The failure of the Defendant to respond to the notice of rescission is a separate violation of 15 U.S.C. § 1640 (a) and Mass .G.L. ch. 140D § 32 entitling the Plaintiffs to an award of statutory damages.

20. Pursuant to 15 U.S.C. §1641(c) and the Massachusetts counterpart, Mass. G.L., ch.140D 33(c), Plaintiffs are entitled to rescind their mortgage transaction against the assignee.

21. In addition, under 15 U.S.C. § 1640(d), any assignee of a HOEPA loan is subject to all claims and defenses that the borrower has. 209 C.M.R. 32.32(5)(c) likewise subjects any assignee to claims and defenses that exist with respect to the original creditor.

## **COUNT I-RESCISSION AND DAMAGES**

22. Plaintiffs incorporate paragraphs 1 through 21 above.

23. The loan made to Plaintiffs violated TILA, HOEPA, Mass .G.L. ch. 140D and 209 C.M.R. 32.32

---

[1] Upon information and belief the Section 32 HOEPA notices provided to consumers by Foundation Funding during the time period of Plaintiffs mortgage transaction were defective as they failed to provide all of the required information under HOEPA.

24. Plaintiffs are entitled to enforce their rescission demand, statutory damages and other relief authorized under TILA, HOEPA and the Massachusetts counterparts.

**WHEREFORE**, it is respectfully prayed that this Court:

1. Enforce the Plaintiffs notice of rescission and accordingly declare the mortgage transaction between Plaintiffs and Defendant rescinded;

2. Order Defendant to take all action necessary to terminate any security interest in Plaintiffs' property created under the transaction and that the Court declare all such security interests void;

3. Enjoin Defendant during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the Plaintiffs' property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps to deprive Plaintiffs of ownership of that property;

5. Award the Plaintiffs both statutory and enhanced damages;

6. Award the Plaintiffs costs and a reasonable attorney's fee.

7. Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____
Christopher M. Lefebvre
LAW OFFICES OF CLAUDE
    LEFEBVRE & SONS
P.O. Box 479
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (FAX)
B.B.O. # 629056

## JURY DEMAND

Plaintiffs demand trial by jury.

                                                                                                      _____
                                                                                                      Christopher M. Lefebvre

I:\case\long7.061\pleading\cmplt

# Exhibit A

RECORD AND RETURN TO
REALTY REPORTS
242 OLD COUNTRY RD., STE. 101
MINEOLA, NY 11501

CERTIFIED
TRUE COPY

134522

———————————[Space Above This Line For Recording Data]———————————

State of Massachusetts

# MORTGAGE

FHA Case No.
251-2543906-703-203
LOAN ID # 6447415

THIS MORTGAGE ("Security Instrument") is given on DECEMBER 29TH, 2000. The Mortgagor is THERESA LUSCIERBELINI AND RICHARD LUSCIERBELINI, WIFE AND HUSBAND

("Borrower"). This Security Instrument is given to FOUNDATION FUNDING GROUP, INC.
, which is organized and existing under the laws of
THE STATE OF NEW JERSEY      , and whose address is 3627 N. WATERS
AVENUE, SUITE 800, TAMPA, FL 33614             ("Lender"). Borrower
owes Lender the principal sum of ONE HUNDRED TWO THOUSAND SEVEN HUNDRED FIFTY AND
NO/100- - - - - - - - - - - - Dollars (U.S. $ 102,750.00    ). This debt is evidenced by
Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on FEBRUARY 1ST, 2016     . This
Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower
does hereby mortgage, grant and convey to Lender, with power of sale, the following described property
located in BERKSHIRE                           County, Massachusetts:
SEE EXHIBIT 'A' ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

which has the address of      546 BARBOUR STREET,                NORTH ADAMS
                              [Street]                            [City]
Massachusetts    01247       ("Property Address");
                 [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property."
BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the
right to mortgage, grant and convey the Property and that the Property is unencumbered, except for
encumbrances of record. Borrower warrants and will defend generally the title to the Property against all
claims and demands, subject to any encumbrances of record.
THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.
1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.

FHA Massachusetts Mortgage - 4/96
MAFMIG - 08111999           Page 1 of 5           Initials: TLB  RL
                                                           Doc Prep Plus, Inc.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the

MAFM2G - 08111999                                Page 2 of 5                                 Initials: TLB PB
                                                                                             Doc Prep Plus, Inc.

LOAN ID # 6447415

Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

    (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
    
    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
    
    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
    
    (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
    
    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
    
    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.
    
    (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.
    
    (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
    
    (e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall

Initials: _TLB_ _AB_

MAFMIG - 08111999     Page 3 of 5     Doc Prep Plus, Inc.

LOAN ID # 6447415

lender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Initials: TLB / RB

MAFM4G - 05111999    Page 4 of 5    Doc Prep Plus, Inc.

Lender shall not be required to enter upon, take control of, or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider          ☐ Growing Equity Rider      ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

12-30-00     _Theresa Luscier-Belini_ (Seal)
             THERESA LUSCIERBELINI          -Borrower

12-30-00     _Richard Belini_ (Seal)
             RICHARD LUSCIERBELINI          -Borrower
                      RB

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

COMMONWEALTH OF MASSACHUSETTS,     BERKSHIRE     County ss:

On this __29TH__ day of __DECEMBER, 2000__, before me personally appeared __THERESA LUSCIERBELINI AND RICHARD LUSCIERBELINI__

_____, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires:
LARRY D. GAMMON
Notary Public
My Comm. Expires Feb. 21, 2003    _Larry Gammon_
                                   Notary Public

MAFMSG - 08111999          Page 5 of 5          Doc Prep Plus, Inc.

# Exhibit B

Multistate  
NOTE

LOAN ID # 5447415

FHA Case No.  
251-2543906-703-203

DECEMBER 29TH, 2000  
[Date]

MINEOLA, NY  
[City, State]

546 BARBOUR STREET, NORTH ADAMS, MA 01247  
[Property Address]

1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means FOUNDATION FUNDING GROUP, INC. and its successors and assigns.

2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED TWO THOUSAND SEVEN HUNDRED FIFTY- - - - - - - - - - - - - - - - - - - - - - - - - - - - - Dollars (U.S. $ 102,750.00 ) plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SEVEN percent ( 7.000 %) per year until the full amount of principal has been paid.

3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. MANNER OF PAYMENT

(A) Time  
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on MARCH 1ST, 2001 . Any principal and interest remaining on the first day of FEBRUARY, 2016 will be due on that date, which is called the "Maturity Date."

(B) Place  
Payment shall be made at 3627 W. WATERS AVENUE, SUITE 800, TAMPA, FL 33614 or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount  
Each monthly payment of principal and interest will be in the amount of U.S. $ 923.55 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for Payment Adjustments  
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge         ☐ Other [specify]  
☐ Growing Equity Allonge

5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments  
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of FIFTEEN calendar days after the payment is due, Lender may collect a late charge in the amount of THREE percent ( 3.000 %) of the overdue amount of each payment.

(B) Default  
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the

Initials: TLB RB

FHA Multistate Rate Note - 12/95  
AAFN1G - 05171999                            Page 1 of 2                              Doc Prep Plus, Inc.

LOAN ID # 6447415

event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Theresa Lusciterbelini_ (Seal)
THERESA LUSCIERBELINI  -Borrower

_Richard Belini_ (Seal)
RICHARD ~~LUSCIERBELINI~~  -Borrower
RB

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

AAFN2G - 05171999    Page 2 of 2    Doc Prep Plus, Inc.