## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

| | |
|---|---|
| RICHARD BELINI and<br>THERESA LUSCIER-BELINI, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) **CA: 04-30083 MAP** |
| WASHINGTON MUTUAL BANK, FA, | )<br>)<br>) **JURY DEMANDED** |
| Defendant. | )<br>) |

### SECOND AMENDED COMPLAINT

### INTRODUCTION

1.     This action seeks redress against Washington Mutual Bank, FA ("Washington Mutual") for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA") and the Home Ownership Equity Protection Act amendment to TILA, 15 U.S.C § 1639 (hereinafter "HOEPA") to enforce the Plaintiffs' right to rescind a consumer credit transaction, to declare void the Defendant's security interest in the Plaintiffs' home, to seek statutory and actual damages and attorney's fees by reason of the Defendant's violations of the Act and Regulation Z, 12 C.F.R. 226 (hereinafter called "Regulation Z"), and it's Massachusetts counterparts, Massachusetts Consumer Credit Cost Disclosure Act, Mass. G.L. ch. 140D and 209 C.M.R. part 32.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action under 15 U.S.C. §1640 (TILA), and 28 U.S.C. §§1331 ( general jurisdiction),1332 ( diversity jurisdiction) and 1337 ( interstate commerce) and 1367 ( supplemental jurisdiction). Diversity jurisdiction is applicable as the Plaintiffs are residents of Massachusetts and seek rescission of a $102,750.00 mortgage

1

obligation held by an out of state corporation that does not have it's principle place of business in Massachusetts.

3.    Venue in this District is proper because Defendant does business in this District.

## PARTIES

4.    Plaintiffs Richard and Theresa Belini reside in a home which they own at 546 Barbour Street, North Adams, Massachusetts.

5.    Foundation Funding Group, Inc. ("Foundation Funding") was the provider of the Plaintiffs' mortgage but is now defunct.

6.    At the time of the Plaintiffs' mortgage, Foundation Funding entered into more than 5 transactions per year in which credit was extended that was secured by the principal residence of a consumer and was used for purposes other than the initial acquisition or construction of the residence.

7.    Therefore, at the time of the transaction Foundation Funding was a creditor as defined in TILA and implementing Federal Reserve Board Regulation Z and Mass. G.L., ch. 140D.

8.    Defendant Washington Mutual Bank, FA is the assignee and present holder of the Plaintiffs' mortgage from Foundation Funding.

## FACTS

9.    On or about December 30, 2000, Plaintiffs obtained a $102,750.00 mortgage loan from the now defunct entity, Foundation Funding Group, Inc. secured by their principle residence. All of the proceeds of the loan were used for personal, family or household purposes.

10.    Upon information and belief, Defendant Washington Mutual is the assignee and owner of the mortgage obtained by Plaintiffs from Foundation Funding.

11.    In connection with the loan of December 30, 2000, Plaintiffs received or signed the following documents:

a.    A Mortgage attached as <u>Exhibit A</u>;

b.    A Note attached as <u>Exhibit B</u>, and;

c.    A HUD-1 Settlement Statement, attached as <u>Exhibit C</u>;

d.    A Notice of Right to Cancel, attached as <u>Exhibit D</u>;

e.    Certificate (That Customer Does Not Rescind Transaction), attached as <u>Exhibit E</u>.

12.    The Notice of Right to Cancel (<u>Exhibit D</u>) inaccurately referenced the date of the transaction as December 29, 2000. The Notice of Right to Cancel was also defective as it incorrectly contained a deadline to rescind of January 3, 2001. Upon information and belief Foundation Funding treated and intended the January 3, 2001 date contained in the Notice of Right to Cancel as the deadline in which Plaintiffs could rescind the transaction. Accordingly, the right to cancel was materially confusing and defective and therefore, Plaintiffs were not given accurate material disclosures and have an extended right to rescind their loan.

13.    In addition, the Notice of Right to Cancel was negated and contradicted by the simultaneous issuance and execution of <u>Exhibit E</u>.

14.    The Plaintiffs mortgage loan transaction was an extension of credit by a creditor subject to HOEPA and the implementing Federal Reserve Board Regulation Z, 12 C.F.R. § 226.32 and it's Massachusetts counterpart, 209 C.M.R. 32.32.

15.    The Plaintiffs were accordingly entitled to the following disclosure (together

3

with additional disclosures concerning the terms of the mortgage) at least three (3) days prior to the closing:

> You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet the obligations under this loan.

16.    Although the December 30, 2000  mortgage transaction was a high cost mortgage as defined by 1602(aa) of TILA, the Plaintiffs were not provided with the special advanced disclosures as required by HOEPA and or the Massachusetts counterpart 209 C.M.R. 32.32.

17.    Because the notice of right to cancel was defective and the advanced required disclosures were not provided, Plaintiffs have a continuing right to rescind the loan, which they exercised on or about May 9, 2003. Exhibit F.

18.    On May 12, 2003 the Defendant acknowledged receipt of the rescission demand but has refused to release the security interest on the Plaintiffs' property. Exhibit G.

19.    15 U.S.C. § 1635(g) provides that a court may award damages under section 1640 in addition to rescission.  Mass .G.L. ch. 140D § 10(g) is identical except for citation.

20.    The failure of the Defendant to respond to the notice of rescission is a separate violation of 15 U.S.C. § 1640 (a) and Mass .G.L. ch. 140D § 32 entitling the Plaintiffs to an award of statutory damages.

21.    Pursuant to 15 U.S.C. §1641(c) and the Massachusetts counterpart, Mass. G.L., ch.140D 33(c) , Plaintiffs are entitled to rescind their mortgage transaction against the assignee.

22.    In addition, under 15 U.S.C. § 1640(d), any assignee of a HOEPA loan is subject to all claims and defenses that the borrower has. 209 C.M.R. 32.32(5)(c) likewise subjects

any assignee to claims and defenses that exist with respect to the original creditor.

23.    The Defendant has recently provided a copy of the HOEPA disclosure which they claim was provided to the Plaintiffs. A copy of said notice is attached as <u>Exhibit H</u>.

## <u>COUNT I-RESCISSION AND DAMAGES</u>

24.    Plaintiffs incorporate paragraphs 1 through 23 above.

25.    The loan made to Plaintiffs violated TILA, HOEPA, Mass .G.L. ch. 140D and 209 C.M.R. 32.32

26.    In the alternative, the Plaintiffs allege that the HOEPA notice alleged to be given to them, as referenced in <u>Exhibit H</u>, is defective as a matter of law.

27.    Plaintiffs are entitled to enforce their rescission demand, statutory damages and other relief authorized under TILA, HOEPA and the Massachusetts counterparts.

**WHEREFORE**, it is respectfully prayed that this Court:

1.    Enforce the Plaintiffs notice of rescission and accordingly declare the mortgage transaction between Plaintiffs and Defendant rescinded;

2.    Order Defendant to take all action necessary to terminate any security interest in Plaintiffs' property created under the transaction and that the Court declare all such security interests void;

3.    Enjoin Defendant during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the Plaintiffs' property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps to deprive Plaintiffs of ownership of that

property;

5.      Award the Plaintiffs both statutory and enhanced damages;

6.      Award the Plaintiffs costs and a reasonable attorney's fee.

7.      Award such other and further relief as the Court deems just and proper.

                            Respectfully submitted,

                            /s/Christopher M. Lefebvre
                            LAW OFFICES OF CLAUDE
                                LEFEBVRE & SONS
                            P.O. Box 479
                            Pawtucket, RI  02862
                            (401) 728-6060
                            (401) 728-6534 (FAX)
                            B.B.O. # 629056

## JURY DEMAND

Plaintiffs demand  trial by jury.

                            /s/Christopher M. Lefebvre

# Exhibit A

RECORD AND RETURN TO
REALTY REPORTS
OLD COUNTRY RD., STE. 101
MINEOLA, NY 11501

CERTIFIED
TRUE COPY

[Space Above This Line For Recording Data]

State of Massachusetts

# MORTGAGE

FHA Case No.
251-2543906-703-203
LOAN ID # 6447415

THIS MORTGAGE ("Security Instrument") is given on DECEMBER 29TH, 2000 . The Mortgagor is THERESA LUSCIERDBLINI AND RICHARD LUSCIERDBLINI, WIFE AND HUSBAND

("Borrower"). This Security Instrument is given to FOUNDATION FUNDING GROUP, INC.
, which is organized and existing under the laws of THE STATE OF NEW JERSEY , and whose address is 3627 N. WATERS AVENUE, SUITE 800, TAMPA, FL 33614 ("Lender"). Borrower owes Lender the principal sum of ONE HUNDRED TWO THOUSAND SEVEN HUNDRED FIFTY AND NO/100- - - - - - - - - - - - - Dollars (U.S. $ 102,750.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on FEBRUARY 1ST, 2016 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in BERKSHIRE County, Massachusetts:
SEE EXHIBIT 'A' ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

which has the address of    546 BARBOUR STREET,    NORTH ADAMS
[Street]    [City]
Massachusetts    01247    ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

FHA Massachusetts Mortgage - 4/96
MAFMIG - 08113999
Page 1 of 5
Initials: TLB
Doc Prep Plus, Inc.

payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the

MAFM2G - 08111999                    Page 2 of 5                    Initials: _____

Doc Prep Plus, Inc.

Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall

Initials: _TLB_ _KB_

tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver.  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices.  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability.  This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy.  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances.  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents.  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property.  Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.  However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.  This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower:  (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Initials: _TLB_
_RB_

MAFM4G - 08111999                    Page 4 of 5                    Doc Prep Plus, Inc.

LOAN ID # 6447415

notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

21. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider              ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider  ☐ Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

12·30·00                     _Theresa Luscier-Belini_ (Seal)
                             THERESA LUSCIERBELINI          -Borrower

12·30·00                     _Richard Belini_ (Seal)
                             RICHARD LUSCIERBELINI         -Borrower
                             RB

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

COMMONWEALTH OF MASSACHUSETTS,          BERKSHIRE          County ss:

On this 29TH day of DECEMBER, 2000, before me personally appeared THERESA LUSCIERBELINI AND RICHARD LUSCIERBELINI

_____, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires:
Judith D. Gammon
Notary Public
My Comm. Expires Feb. 21, 2003

_Larry Gammon_
Notary Public

MAFMSG - 08111999                    Page 5 of 5                    Doc Prep Plus, Inc.

# Exhibit B

Multistate

# NOTE

FHA Case No.
251-2543306-703-203

DECEMBER 29TH, 2000
[Date]

MINEOLA, NY
[City, State]

546 BARBOUR STREET, NORTH ADAMS, MA   01247
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means FOUNDATION FUNDING GROUP, INC.
and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED TWO THOUSAND SEVEN HUNDRED FIFTY - - - - - - - - - - - - - - - - - - - - - - - - - Dollars (U.S. $   102,750.00  ) plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SEVEN percent (   7.000  %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on MARCH 1ST, 2001              . Any principal and interest remaining on the first day of  FEBRUARY,  2016  will be due on that date, which is called the "Maturity Date."

**(B) Place**
Payment shall be made at 3627 W. WATERS AVENUE, SUITE 800, TAMPA, FL 33614
             or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $    923.55    . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge          ☐ Other [specify]
☐ Growing Equity Allonge

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of  FIFTEEN          calendar days after the payment is due, Lender may collect a late charge in the amount of THREE             percent (   3.000   %) of the overdue amount of each payment.

**(B) Default**
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the

FHA Multistate Rate Note - 12/95
AAFHIG - 05171999

Page 1 of 3

Initials: *TLB*
*PB*

Doc Prep Plus, Inc.

event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Theresa Luscier-Belini_ (Seal)
THERESA LUSCIERBELINI        -Borrower

_Richard Belini_ (Seal)
RICHARD LUSCIERBELINI        -Borrower
RB

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

AAFNGG - 05171999            Page 2 of 2            Doc Prep Plus, Inc.

# Exhibit C

| B. Type of Loan | | | |
|---|---|---|---|
| Case No. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance |
| 1. ☒ FHA   2. ☐ FmHA   3. ☐ Conv. Unins. | | 6447415 | 251-2543996-703-203 |
| 4. ☐ VA   5. ☐ Conv. Ins. | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME AND ADDRESS OF BORROWER: THERESA LUSCIEREBLINI
RICHARD BURGERSEBLINI
546 BARBOUR STREET
NORTH ADAMS, MA, 01247

E. NAME AND ADDRESS OF SELLER:

F. NAME AND ADDRESS OF LENDER: FOUNDATION FUNDING GROUP, INC.
3627 W. WATERS AVENUE, SUITE 600
TAMPA, FL 33614

G. PROPERTY
LOCATION:   546 BARBOUR STREET
NORTH ADAMS, MA  01247

H. SETTLEMENT AGENT:   REALTY REPORTS
PLACE OF SETTLEMENT: 242 OLD COUNTRY RD., STE. 101
MINEOLA, NY 11501

I. SETTLEMENT DATE:   DECEMBER 29, 2000

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (from line 1400) | 12762.30 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE:** | | **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE:** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER:** | $ 12762.30 | **420. GROSS AMOUNT DUE TO SELLER:** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 102750.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | | **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER:** | $ 102750.00 | **520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER:** | $ 0.00 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross amount due from borrower (line 120) | 12762.30 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | ( 102750.00 ) | 602. Less total reductions in amount due seller (line 520) | ( ) |
| 303. CASH ☐ FROM ☒ TO BORROWER:   $ 89987.70 | | 603. CASH ☐ TO ☐ FROM SELLER:   $ 0.00 | |

HUD - 1 (3-86)
RESPA, HB 4305.2

Page 1 of 2

Doc Prep Plus, Inc.

| | | FUNDS AT SETTLEMENT | FUNDS AT SETTLEMENT |
|---|---|---|---|
| 701. | | | |
| 702. Commission paid at Settlement | | | |
| 704 | | | |

### 800. ITEMS PAYABLE IN CONNECTION WITH LOAN

| | | |
|---|---|---|
| 801. Loan Origination fee  1.000 % FOUNDATION FUNDING GROUP | $1007.50 | |
| 802. Loan Discount  7.000 % FOUNDATION FUNDING GROU | $7392.50 | |
| 803. Appraisal fee to | $350.00 | |
| 804. Credit report to | | |
| 805. Lender's Inspection fee | | |
| 806. Mortgage insurance application fee | | |
| 807. Document Preparation Fee  TRADEWINDS | $125.00 | |
| 808. CREDIT REPORT | $18.00 | |
| 809. | | |
| 810. | | |
| 811. | | |
| 812. | | |
| 813. | | |
| 814. | | |
| 815. | | |

### 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE

| | | |
|---|---|---|
| 901. Interest from 1/4/01  TO 2/1/01 @ $ 19.71/DAY | $551.88 | |
| 902. Mortgage insurance premium for  mos. to FOUNDATION FUNDING GROUP | $2015.00 | |
| 903. Hazard insurance premium for  1 yrs. to  329.00 | | |
| 904. Flood Insurance Premium for  yrs. to | | |
| 905. | | |

### 1000. RESERVES DEPOSITED WITH LENDER

| | | |
|---|---|---|
| 1001. Hazard insurance  7.00  months @ $ 27.42  per month | $224.20 | |
| 1002. Mortgage insurance  months @ $  per month | | |
| 1003. City property taxes  months @ $  per month | | |
| 1004. County property taxes  5  months @ $ 75.31  per month | $376.55 | |
| 1005. Annual taxes insurance  months @ $  per month | | |
| 1006. Flood insurance  months @ $  per month | | |
| 1007.  months @ $  per month | | |
| 1008. AGGREGATE ACCOUNTING ADJUSTMENT | -$75.33 | |

### 1100. TITLE CHARGES

| | | |
|---|---|---|
| 1101. Settlement or closing fee to | $260.00 | |
| 1102. Abstract or title search to | | |
| 1103. Title examination to | | |
| 1104. Title insurance binder to | | |
| 1105. Document preparation to | | |
| 1106. Notary fees to | | |
| 1107. Attorney's fees to | | |
| 1108. Title Insurance  REALTY REPORTS | $152.00 | |
| 1109. Lender's coverage $ | | |
| 1110. Owner's coverage $ | | |
| 1111. | | |
| 1112. | | |
| 1113. TITLE, ABSTRACT/SEARCH/ENDORSEMENT FEES | $286.00 | |

### 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES

| | | |
|---|---|---|
| 1201. Recording fees: Deed $ 25.00  ; Mortgage $  ; Release $ | $25.00 | |
| 1202. City/county tax/stamps: Deed $  ; Mortgage $ | | |
| 1203. State tax/stamps:  Deed $  ; Mortgage $ | | |
| 1204. | | |
| 1205. | | |

### 1300. ADDITIONAL SETTLEMENT CHARGES

| | | |
|---|---|---|
| 1301. Survey to | $175.00 | |
| 1302. Pest inspection to | $75.00 | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |

| | | |
|---|---|---|
| 1400. TOTAL SETTLEMENT CHARGES (Enter on line 103, Section J and line 502, Section K) | $12752.30 | |

Borrower: ___ THERESA LIECZKEBELINI ___ Date: 12-30-00  Seller: ___ Date: ___
Borrower: ___ RICHARD LIECZKEBELINI ___ Date: 12-30-00  Seller: ___ Date: ___
The HUD-1 Settlement Statement ... Settlement Agent: REALTY REPORTS ___ Date: 12/29/00

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

LOAN #06-6447415

# ADDENDUM TO HUD-1
## SETTLEMENT STATEMENT

**NOTICE TO ALL PARTIES:** If information is obtained which indicates that the source of the borrower's financial contribution is other than from the borrower or other than stated by the lender in its closing instructions, the settlement agent is to obtain written instructions from the lender before proceeding with settlement.

### CERTIFICATION OF BUYER IN AN FHA-INSURED LOAN TRANSACTION

    I certify that I have no knowledge of any loans that have been or will be made to me (us) or loans that have been or will be assumed by me (us) for purposes of financing this transaction, other than those described in the sales contract dated _____ (including addenda). I certify that I (we) have not been paid or reimbursed for any of the cash downpayment. I certify that I (we) have not and will not receive any payment or reimbursement for any of my (our) closing costs which have not been previously disclosed in the sales contract (including addenda) and/or my application for mortgage insurance submitted to my (our) mortgage lender.

| | | | |
|---|---|---|---|
| _Theresa Luscier-Belini_ 12·30·10 | | _Richard Belini_ 12·30·10 | |
| THERESA LUSCIERBELINI -Borrower | | RICHARD ~~LUSCIER~~BELINI *BB* -Borrower | |
| _____ -Borrower | | _____ -Borrower | |
| _____ -Borrower | | _____ -Borrower | |

### CERTIFICATION OF SELLER IN AN FHA-INSURED LOAN TRANSACTION

    I certify that I have no knowledge of any loans that have been or will be made to the borrower(s), or loans that have been or will be assumed by the borrower(s), for purposes of financing this transaction, other than those described in the sales contract dated _____ (including addenda). I certify that I have not and will not pay or reimburse the borrower(s) for any part of the cash downpayment. I certify that I have not and will not pay or reimburse the borrower(s) for any part of the borrower's closing costs which have not been previously disclosed in the sales contract (including any addenda).

| | | | |
|---|---|---|---|
| _____ -Seller | | _____ -Seller | |
| _____ -Seller | | _____ -Seller | |

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details, see: Title 18 U.S. Code Sections 1001 and 1010.

### CERTIFICATION OF SETTLEMENT AGENT IN AN FHA-INSURED LOAN TRANSACTION

    To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were (i) received, or (ii) paid outside closing, and the funds received have been or will be disbursed by the undersigned as part of the settlement of this transaction. I further certify that I have obtained the above certifications which were executed by the borrower(s) and seller(s) as indicated.

| | |
|---|---|
| _____ Settlement Agent | _____ Date |

[The certifications contained herein may be obtained from the respective parties at different times or may be obtained on separate addenda]

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details, see: Title 18 U.S. Code Sections 1001 and 1010.

AADE0G - 10291996

Doc Prep Plus, Inc.

# Exhibit D

LENDER: FOUNDATION FUNDING GROUP, INC.

DATE: DECEMBER 29TH, 2000
LOAN NUMBER: 6447415
TYPE: FHA FIXED REFINANCE
BORROWER: RICHARD LUCCIURBELINI
      RB

BORROWER ADDRESS: 546 BARBOUR STREET, NORTH ADAMS, MA, 01247

PROPERTY ADDRESS:   546 BARBOUR STREET
                    NORTH ADAMS, MA  01247

You are entering into a transaction that will result in a mortgage on your home.  You have a legal right under federal law to cancel this transaction, without cost, within THREE (3) BUSINESS DAYS from whichever of the following events occurs last:

(1) the date of the transaction, which is  DECEMBER  29TH,  2000                    ; or
(2) the date you received your Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage is also cancelled.  Within TWENTY (20) CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage on your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property.  If it is impractical or unfair for you to return the property, you must offer its reasonable value.  You may offer to return the property at your home or at the location of the property.  Money must be returned to the address below.  If we do not take possession of the money or property within TWENTY (20) CALENDAR DAYS of your offer, you may keep it without further obligation.

---

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing at:

FOUNDATION FUNDING GROUP, INC.
3627 W. WATERS AVENUE, SUITE 800
TAMPA, FL 33614

You may use any written statement that is signed and dated by you and states your intention to cancel and/or you may use this notice by dating and signing below.  Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of   JANUARY 3RD, 2001                        (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.)  If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

## I WISH TO CANCEL

SIGNATURE _____        DATE _____

---

I/We acknowledge receipt of two copies of NOTICE OF RIGHT TO CANCEL and one copy of Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each of the borrowers in this transaction has the right to cancel.  The exercise of this right by one borrower shall be effective as to all borrowers.

I/We acknowledge receipt of two copies of NOTICE OF RIGHT TO CANCEL.

*Theresa Luccies-Belen*

DECEMBER  29TH,  .2000          *Richard Belen*                    12-30-00
Date                            RICHARD LUCCIURBELINI                -Borrower
                                   RB

Doc Prep Plus, Inc.

# Exhibit E

Received: 12/30/00 11:20AM;

DEC. 29. 2000

LOAN ID # 6447415

## CERTIFICATE

### (That Customer Does Not Rescind Transaction)

The undersigned certify that they entered into a transaction on DECEMBER 29TH, 2000 with

*(Date)*

FOUNDATION FUNDING GROUP, INC.

*(Name of Lender)*

and they were given two copies of Notice of Right of Rescission and Notice of Effect of Rescission, as required under the provisions of Truth in Lending Act.

Whereas more than 3 business days have elapsed since the undersigned received the above and foregoing NOTICE OF RIGHT OF RESCISSION and other Truth-in-Lending Disclosures concerning this transaction; in order to induce the Creditor(s) to proceed with full performance under the agreement in question; the undersigned do herewith warrant, covenant and certify that they have not exercised their right to rescind; that they do not wish to and will not rescind said transaction; and that they do hereby ratify and confirm the same in all respects. They further represent that the undersigned are the only persons entitled to rescind, in that they are all of the owners of the real property securing said obligation.

NOTE: EACH Customer must sign.

| DECEMBER 29TH, 2000 | *Theresa Luscier-Belini* | 12·30·00 |
|---|---|---|
| Date | THERESA LUSCIER BELINI | -Borrower |

| DECEMBER 29TH, 2000 | *Richard Belini* | 12·30·00 |
|---|---|---|
| Date | RICHARD LUSCIER BELINI | -Borrower |
|  | RB |  |

| | |
|---|---|
| Date | -Borrower |

| | |
|---|---|
| Date | -Borrower |

| | |
|---|---|
| Date | -Borrower |

| | |
|---|---|
| Date | -Borrower |

XFPGHI - 12151998

Doc Prep Plus, Inc.

WAMU-BELINI 00028

# Exhibit F



CHRISTOPHER M. LEFEBVRE, ESQUIRE
*ADMITTED IN MASSACHUSETTS & RHODE ISLAND*

May 9, 2003

**CERTIFIED MAIL-RETURN RECEIPT REQUESTED**

Foundation Funding Group, Inc.
Attn: Officer or Agent
3627 W. Waters Avenue, Suite 800
Tampa, FL 33614

Washington Mutual Bank, FA
Attn: Officer or Agent
PO Box 3139
Milwaukee, WI 53201-3139

Re:  **Notice of Rescission by Richard and Theresa Belini, 546 Barbour Street, North Adams, Massachusetts, Loan Number: 6447415, Closing Date: 12/29/2000**

To Whom It May Concern:

I represent Mr. and Mrs. Belini concerning the loan transaction they entered into with Foundation Funding Group, Inc. on December 29, 2000, in which they subsequently became obligated on a mortgage loan transaction with Foundation Funding Group, Inc.   Please be advised that I have been authorized by my clients to rescind that transaction and hereby exercise that right pursuant to the Federal Truth In Lending Act, 15 U.S.C. Section 1635 and Regulation Z, Section 226.23.

The primary basis for the rescission is that Mr. and Mrs. Belini were not provided with a completed copy of the notice of their right to rescind the above consumer credit contract, in violation of 15 U.S.C. Section 1635(a) and Regulation Z, Sections 226.17 and 226.23, and the advanced Home Ownership Equity Protection Act disclosures required by 15 U.S.C. § 1639(b)(1).

The security interest held by Foundation Funding Group, Inc. on Mr. and Mrs. Belini's property located at 546 Barbour Street, North Adams, Massachusetts is void as of this rescission. Pursuant to Regulation Z, you have twenty days after receipt of this Notice of Rescission to return to my clients all monies paid and to take action necessary and appropriate to terminate the security interest.

Very truly yours,
Richard and Theresa Belini
By their Attorney,

Christopher M. Lefebvre
P. O. Box 479
Pawtucket, RI 02862

# Exhibit G

SERVICE
SENT TO:
5/9/2003
4:55 PM

| | $2.75 |
| CERTIFIED FEE | |
| TOTAL POSTAGE AND FEE | $1.25 |
| Code: Belini File: | $5.73 |

4.42

Washington Mutual Bank, FA
Attn: Officer or Agent
PO Box 3139
Milwaukee, WI 53201-3139

PS FORM 3800

UNITED STATES POSTAL SERVICE   RECEIPT FOR CERTIFIED MAIL
NO INSURANCE COVERAGE PROVIDED
NOT FOR INTERNATIONAL MAIL
(SEE OTHER SIDE)

Tampa, FL 33614

9, 2003

hington Mutual Bank, FA
: Officer or Agent
Box 3139
waukee, WI 53201-3139

Re:    Notice of Rescission by Richard and Theresa Belini, 546 Barbour Street,
North Adams, Massachusetts, Loan Number: 6447415, Closing Date:
12/29/2000

To Whom It May Concern:

I represent Mr. and Mrs. Belini concerning the loan transaction they entered into with
Foundation Funding Group, Inc. on December 29, 2000, in which they subsequently became

ing Group, Inc.  Please be advised
tion and hereby exercise that right
a 1635 and Regulation Z, Section

I also wish to receive the
following service (for an extra fee):
[X] Restricted Delivery
Consult postmaster for fee.

DER:
te items 1,2 and 3.
te if restricted delivery is desired.
our name and address on the reverse of this form so that we can return this card to you.
this form to the front of the mailpiece, or on the back if space does not permit.
Return Receipt Requested" on the mailpiece below the article number.
rn receipt fee will provide you the signature of the person delivered to and the date of

le Addressed to:

ashington Mutual Bank, FA
ttn: Officer or Agent
O Box 3139
ilwaukee, WI 53201-3139

2. Article Number
7110 1093 9385 0000 0645

3. Service Type
☒ CERTIFIED

Date of Delivery

By: (Print Name)
Step

re - (Addressee or Agent)

. Belini were not provided with a
consumer credit contract, in violation
7 and 226.23, and the advanced Home
.S.C. § 1639(b)(1).

, Inc. on Mr. and Mrs. Belini's
usetts is void as of this rescission.
this Notice of Rescission to return to
ropriate to terminate the security

3811
M  5/9/2003     Code: Belini

DOMESTIC RETURN RECEIPT
File:

Very truly yours,
Richard and Theresa Belini
By their Attorney,

Christopher M. Lefebvre
P. O. Box 479
Pawtucket, RI 02862

*TWO DEXTER STREET, P.O. BOX 479   PAWTUCKET, RI 02862   PHONE: (401) 728-6060   FAX: (401) 728-6534*

# Exhibit H

# SECTION 32 MORTGAGE LOAN DISCLOSURE

LOAN ID# 6447415

Date: _____

Borrower Name 1: THERESA LUSCIERBELINI
Borrower Name 2: RICHARD LUSCIERBELINI RB
Borrower Name 3: _____
Borrower Name 4: _____
Borrower Name 5: _____
Borrower Name 6: _____
Property Address: 546 BARBOUR STREET
NORTH ADAMS, MA 01247
Closing Date: DECEMBER 29TH, 2000

YOU ARE NOT REQUIRED TO COMPLETE THIS AGREEMENT MERELY BECAUSE YOU HAVE RECEIVED THE DISCLOSURES OR HAVE SIGNED A LOAN APPLICATION. IF YOU OBTAIN THIS LOAN, THE LENDER WILL HAVE A MORTGAGE ON YOUR HOME. YOU COULD LOSE YOUR HOME AND ANY MONEY YOU HAVE PUT INTO IT IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THE LOAN (Regulation Z, Section 226.32(c)(1)).

1. The Annual Percentage Rate of your loan is _____ 8.960 _____ %

2. The amount of the monthly payment is $ _____ 923.55 _____ .

3. Your loan is a:

   (Check one)

   ☒ Fixed rate loan.

   OR

   ☐ Variable rate loan. The interest rate and monthly payment on your variable rate loan may go up. The highest monthly payment on your variable rate is $ _____ .

THERE ARE 2 DISCLOSURES FOR EACH BORROWER. EACH BORROWER SHOULD SEPARATELY SIGN 2 DISCLOSURES. PLEASE RETURN 1 ORIGINAL EXECUTED DISCLOSURE FOR EACH BORROWER UNDER THE LOAN IN THE ATTACHED ENVELOPE. ONE ORIGINAL SHOULD BE RETAINED BY YOU FOR YOUR RECORDS.

I HEREBY CERTIFY THAT I HAVE RECEIVED THIS DISCLOSURE AT LEAST 3 BUSINESS DAYS PRIOR TO MY LOAN CLOSING. I CERTIFY THAT I HAVE THE FINANCIAL ABILITY TO MAKE THE SCHEDULED PAYMENTS TO REPAY THIS LOAN OBLIGATION.

| DECEMBER 29TH, 2000 | _Theresa Luscier-Belini_ 12-30-00 |
|---|---|
| Date | THERESA LUSCIERBELINI        Borrower |
| DECEMBER 29TH, 2000 | _Richard P. Belini_ 12-30-80 |
| Date | RICHARD LUSCIERBELINI RB     Borrower |
| _____ | _____ |
| Date | Borrower |
| _____ | _____ |
| Date | Borrower |
| _____ | _____ |
| Date | Borrower |
| _____ | _____ |
| Date | Borrower |

I HEREBY CERTIFY THAT I MAILED THIS DISCLOSURE TO THE BORROWER, 5 OR MORE BUSINESS DAYS PRIOR TO THE LOAN CLOSING.

_____      _____
Name                           Date

AANCQI • 10121995

Doc Prep Plus, Inc.